FILED
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT** 2005 JAN 28 P 1: 16
**DISTRICT OF MASSACHUSETTS**

U.S. DISTRICT COURT
DISTRICT OF MASS.

05 CV 10182 RWZ

**CIVIL ACTION NO.**

---

**DEBRA SIMON,**
**Plaintiff,**

**v.**

**MACY'S EAST, INC., And**
**FEDERATED DEPARTMENT**
**STORES, INC and**
**MACY'S EAST, INC,**
**ENHANCED SEVERANCE**
**PLAN FOR TOP OF THE**
**RANGE HOURLY**
**EMPLOYEES-GROUP 1,**
**Defendants**

---

RECEIPT #_____
AMOUNT $_____ 150.00
SUMMONS ISSUED 3
LOCAL RULE 4.1 -
WAIVER FORM -
MCF ISSUED -
BY DPTY. CLK. M.P.
DATE 1/31/05

**COMPLAINT AND DEMAND FOR JURY TRIAL** MAGISTRATE JUDGE JLA

PARTIES

1.     The plaintiff, Debra Simon ("Ms. Simon"), is an individual residing in Massachusetts.

2.     Macy's East, Inc., Enhanced Severance Plan for Top of the Range Hourly Employees-Group 1 ("the Severance Plan") is a benefit plan under the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq.

3.     The defendant, Macy's East., Inc., ("Macy's") is a Corporation, upon information and belief, having a principal place of business in New York, and doing business in Massachusetts, and is the Plan Administrator of the Severance Plan.

4.     The Defendant, Federated Department Stores, Inc. ("Federated") is a Corporation, upon information and belief, having a principal place of business in Ohio, and doing business in Massachusetts, and is the Plan Sponsor of the Severance Plan.

## JURISDICTION AND VENUE

5.      This is an action brought pursuant to section 502(a), (e) (1) and (f) of ERISA, 29 U.S.C. § 1132(a), (e)(1) and (f). The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

6.      Venue is properly laid in this district pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## FACTS

7.      Ms. Simon, a 14 year employee of Macy's, wa s on an approved family leave of absence caring for her two great nieces (ages six and two) on a foster care basis. The leave commenced in November, 2003.

8.      On June 8, 2004, while still on the family leave of absence, Ms. Simon received a telephone message from Judy Walker, Office Manager at the Macy's location in Burlington, directing Ms. Simon to call her by the end of that business day.

9.      Ms. Simon returned the call, just before Ms. Walker left for the evening. Ms. Walker was in a hurry, and briefly explained that Macy's was offering a severance package with an option of early retirement.

10.     The only date that Ms. Walker mentioned was July 31, 2004, which Ms. Simon made a point to note down. Ms. Walker stated she would overnight the package, and Ms. Simon received it on June 9, 2004.

11.     The package, attached hereto as Exhibit One, contains a "general information Q&A," which contains a section defining eligibility requirements to participate in the Enhanced Severance Offer. This section does not include any information as to the length of time the individual offeree has to accept the package, and only states that the employee must be willing to terminate his or her employment on July 31, 2004.

12.     The "general information Q&A" also states that "eligib le employees will have at least 45 calendar days in which to make their decision." Nowhere in the "general information Q&A is a date of July 24, 2004, mentioned.

13.     In the text of the package, which is more than twenty pages in length the date July 31, 2004, appears approximately 10 times. The date July 24, 2004, appears only one time, at the bottom of a sheet, which employees present in the stores were asked specifically to review and sign.

14.     Because Ms. Simon was not present in the store, this sheet was not pointed out to her, and she was unaware of the July 24, 2004, deadline for acceptance of the offer.

15.    Upon information and belief, one or more meetings were held for the benefit of employees to explain the Severance Package. Ms. Simon was not made aware of the meetings.

16.    The Summary Plan Description, accompanying the Severance Package, is devoid of any mention at all of any deadline for the acceptance of the severance offer.

17.    While the Enhanced Severance Notice does state (beginning on the second page) that the offer must be accepted within 45 days from the receipt thereof, Ms. Simon relied on the representation that she had until July 31, 2004 to accept the offer.

18.    On Wednesday, July 28, 2004, Ms. Simon called Judy Walker to accept the Severance Package.

19.    Ms. Walker said that it was too late and that she had needed to know by July 24, 2004. Ms. Walker said that Ms. Simon was the last of the eleven employees in her store that were offered the package to be heard from regarding his or her decision. Despite this fact, Ms. Walker never called Ms. Simon at any time between June 8, 2004 and July 24, 2004 to inquire as to the whereabouts of the completed paperwork.

20.    Ms. Simon explained to Ms. Walker that she had not been notified of the July 24, 2004, date, but Ms. Walker stated there was nothing she could do.

21.    Ms. Simon then asked if she could come back to work on September 2, 2004. Ms. Walker said she was not sure, and that Ms. Simon should check with the benefits department.

22.    Ms. Simon then called the New York number that was listed in the severance information. She spoke with Cathleen Blick, and explained the situation to her. Ms. Blick also stated that it was too late for Ms. Simon to accept the severance package.

23.    Nevertheless, Ms. Simon signed the General Release, and sent two copies overnight mail; one to Judy Walker in Burlington and one to Mr. Bradley Belz in New York. Both copies were received and signed for on July 30, 2004.

24.    Thereafter, in early August, Ms. Simon received a letter dated August 5, 2004 stating that she had been terminated on February 26, 2004. Ms. Simon also received her medical/dental premium check for the month of July back in the mail stating again that she had been terminated on February 26, 2004.

25.    Ms. Simon wrote to Mr. Belz to inquire if the termination date was a mistake, since she had been paying medical/dental premiums all along through the end of July, 2004. Further, she had received her annual company deposit into her 401K account in April, 2004, and had never received any termination-related information, such as

COBRA notices and the like.

26.    No response was forthcoming from Mr. Belz, however, Ms. Simon received a letter from Ms. Blick on September 13, 2004, dated August 31, 2004, and postmarked from New York on September 9, 2004, stating that the termination date had been changed to August 5, 2004 and that her request for the severance package was denied.

27.    If Ms. Simon had been allowed to accept the severance package, she also would have been eligible for an early retirement offer.  That offer included benefits such as the right to stay in the employee health insurance group and store discounts for Ms. Simon's lifetime.

COUNT I-MACY'S EAST, INC.,
(Promissory Estoppel Under 29 U.S.C. §1132)

28.    The plaintiff incorporates paragraphs 1 through 27 by reference, as though fully set forth herein.

29.    The defendant, Macy's, made misrepresentations of fact to the plaintiff regarding the date by which the plaintiff had to accept the Severance Package.

30.    The defendant had reason to know that the plaintiff would rely upon the misrepresentations of fact.

31.    The plaintiff relied on these misrepresentations of fact, and attempted to accept the Severance Package four (4) days after the actual date for acceptance.

32.    The plaintiff's reliance on the misrepresentations was reasonable.

33.    The plaintiff's reliance on the misrepresentations was greatly detrimental.

34.    The actions of the defendant, set forth above, give rise to a cause of action for equitable relief, pursuant to the provisions of 29 U.S.C. § 1132(a)(3), and/or for enforcement of the plaintiff's rights under the plan, pursuant to the provisions of 29 U.C.S. § 1132(a)(1)(B).

COUNT II-ALL DEFENDANTS
(Violation of 29 U.S.C. § 1022)

35.    The plaintiff incorporates paragraphs 1 through 34 by reference, as though fully set forth herein.

36.    The defendants provided a Summary Plan Description, which contains conflicting and vague provisions, which do not comply with the requirements of 29 U.S.C. § 1022.

37.    The actions of the defendants give rise to a cause of action for equitable relief, pursuant to the provisions of 29 U.S.C. § 1132(a)(3), and/or for enforcement of the plaintiff's rights under the plan, pursuant to the provisions of 29 U.C.S. § 1132(a)(1)(B).

## COUNT III-MACY'S EAST, INC.
## AND FEDERATED DEPARTMENT STORES, INC.
(Breach of Fiduciary Duty)

38.    The plaintiff incorporates paragraphs 1 through 37 by reference, as though fully set forth herein.

39.    The defendants have a fiduciary duty to provide accurate information regarding benefits under the Plan. 29 U.S.C. § 1022

40.    The defendants violated this fiduciary duty to the plaintiff both by their oral representations and the misleading and inaccurate statements contained in the Summary Plan description.

41.    The defendants made the misleading and inaccurate oral and written statements with reason to know that the plaintiff would rely on them, and the plaintiff did reasonably rely on the oral and written statements to his great detriment.

42.    The actions of the defendants give rise to a cause of action for equitable relief, pursuant to the provisions of 29 U.S.C. § 1132(a)(3), and/or for enforcement of the plaintiff's rights under the plan, pursuant to the provisions of 29 U.C.S. § 1132(a)(1)(B).

## COUNT IV-ALL DEFENDANTS
(Arbitrary and Capricious Denial of Benefits)

43.    The plaintiff incorporates paragraphs 1 through 42 by reference, as though fully set forth herein.

44.    The actions of the defendants in denying benefits to the plaintiff were arbitrary and capricious.

45.    The actions of the defendants give rise to a cause of action for equitable relief, pursuant to the provisions of 29 U.S.C. § 1132(a)(3), and/or for enforcement of the plaintiff's rights under the plan, pursuant to the provisions of 29 U.C.S. § 1132(a)(1)(B).

COUNT V-MACY'S EAST, INC.
(Violation of 29 U.S.C. § 1140)

46.    The plaintiff incorporates paragraphs 1 through 45 by reference, as though fully set forth herein.

47.    Upon information and belief, the defendant made intentional misrepresentations of fact when it attempted to retroactively create a record indicating that the plaintiff had been terminated in February, 2004.

48.    Upon information and belief, these statements were made with the intent of interfering with the plaintiff's attainment of benefits under the plan. 29 U.S.C. § 1140.

49.    The actions of the defendant give rise to a cause of action for equitable relief, pursuant to the provisions of 29 U.S.C. § 1132(a)(3), and/or for enforcement of the plaintiff's rights under the plan, pursuant to the provisions of 29 U.C.S. § 1132(a)(1)(B).

**WHEREFORE**, the plaintiff, Debra Simon requests that the Court find in her favor and award her the following relief:

    (a)  imposition of a constructive trust in the amount of the benefits that would have been due to the plaintiff under the Enhanced Severance Package;
    (b)  restitution;
    (c)  reinstatement as a beneficiary of the plan;
    (d)  entry of an order allowing the plaintiff to receive the benefits she would have received under the early retirement offer
    (d)  entry of an order stating that the actions of the plaintiff constitute substantial compliance with the Plan's terms regarding acceptance of the Enhanced Severance Offer.
    (e)  attorneys fees' prejudgment interest and costs; and
    (f)  any other relief that the Court deems just and proper.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

                        Respectfully Submitted,
                        Debra Simon,
                        By her Attorneys,


                        Martha M. Wishart, BBO# 556694
                        McKenzie & Associates, P.C.
                        44 School Street, 11th floor
                        Boston, MA 02108
                        (617) 723-0400


Dated:  January 27, 2005



151 WEST 34TH STREET
NEW YORK, NY 10001

June 29, 2004

Dear Associate:

As an individual who has been identified as eligible to participate in the Enhanced Severance Offer, I am writing this letter to alert you to some important information.

As you know, the Enhanced Severance Offer is being made available to employees who are now at or above the maximum rate for their position. Eligible employees who accept the Offer will receive an enhanced severance benefit of two weeks of pay for each consecutive year of service up to a maximum severance benefit of 52 weeks. In addition, for purpose of this Offer only, eligibility requirements for the Federated Health Care Plan for Retirees have been expanded. Employees who are eligible for the Enhanced Severance Offer and who are participants in the Federated Health Care Plan may be eligible for retiree health care benefits if they are at least age 50 with 10 consecutive years of service at the time of their retirement, provided they meet the other requirements for retiree medical coverage.

We are very pleased to provide you with this option. However, the choice you make is an individual one. Please read the information provided carefully. **It is also important to remember that you have forty-five [45] days from the date that you received the official offering documents** to review them and decide if you want to enter into the General Release.

We have been receiving some consistent questions on the HR Information Line. In order to expedite the follow-up for employees, the following supplemental Questions and Answers may be helpful. In the event that you have specific questions regarding the **Federated Health Care Plan for Retirees** or desire information regarding the **Cash Account Pension Plan**, you are encouraged to contact Federated HR Services directly at 1-800-337-2363. Contacting Federated HR Services directly for these types of questions will expedite closure to your question. For other questions, please contact the Macy's East Human Resources Information Line at 1-212-494-5810.

Sincerely,

*Cathleen Blick*

Cathleen Blick
Director, Benefits and Administration

## <u>COMMONLY ASKED QUESTIONS</u>

**How will tax withholding apply to the severance payment?**

❑  Severance payments have a flat tax applied:

➢  25% Federal tax; 6.27% FICA; 1.45% Medicare
➢  State and Local withholding depends on your resident state and locality.

**I am eligible to participate in the Federated Health Care Plan for Retirees, how can I learn what options are available to me and what the Company contribution will be based upon my credited years of service?**

❑  *In order to expedite an answer for you, you should contact Federated HR Services directly at 1-800-337-2363.* Federated HR Services will research each individual and will generally respond directly to you within seven days. If you contact the Macy's East Information Line [1-212-494-5810], you will be referred to the Federated HR Services line [as HR Services must complete the research].

1

 East, Inc.

151 WEST 34TH STREET
NEW YORK, NY 10001

June 7, 2004

Dear Associate:

As you know, the company recently initiated a change in the traditional method of allocating merit increases. Included in this process is a feature that prompts a bonus in lieu of an increase to base hourly rate if your pay rate is at or above the maximum rate for your position. In addition, effective with the May 2005 merit increase, employees at the maximum rate for their position will now be eligible for a bonus only at the exceeds expectations performance level, with the exception of certain specialized areas.

Some of these changes were well received by many employees, as their recent merit increase may have been more than they had realized in the past. For others, this change may have been less welcomed, as their performance increases under the program may be more limiting or may necessitate a shift to a higher level position for increased earning opportunity. While the Company encourages employees to seek higher level positions, particularly commission selling, it is apparent that some employees at the maximum rate for their position may wish to consider an additional opportunity.

As a result, the Company is making a one-time Enhanced Severance Offering to employees who are currently at or above the maximum rate for their position, and based upon current guidelines either received a bonus in lieu of increase this year, or who are now at the maximum rate for their position as a result of the May 2004 merit increase.

Eligible employees who accept the Offer will receive an enhanced severance benefit of 2 weeks of pay for each consecutive year of service up to a maximum severance benefit of 52 weeks. In addition, for purposes of this Offer only, eligibility requirements for the Federated Health Care Plan for Retirees have been expanded. Employees who are eligible for the Enhanced Severance Offer and who are participants in the Federated Health Care Plan may be eligible for retiree health care benefits if they are at least age 50 with 10 consecutive years of service at the time of their retirement, provided they meet the other requirements for retiree medical coverage.

This is only a general description of the benefits available. I ask that you review the materials very carefully to understand the specific eligibility requirements of the Offer and the eligibility requirements to participate in the Federated Health Care Plan for Retirees. In the event that you should decline the Offer, please rest assured that we continue to value your contribution to our organization and look forward to a continued partnership in delivering the outstanding service our customers have come to expect.

We are pleased to provide to you this additional option. However, the choice you make is an individual one. Please read the information carefully and we encourage you to consult with your attorney.

In the event that you have any questions regarding the Offer, please see your Store Manager or call the special Macy's East information line that has been established for this purpose – 212-494-5810. In addition, should you have any questions regarding your benefits, please contact Federated HR Services at 1-800-337-2363.

Sincerely,

Attn: Bradley Belz
Executive Vice President, Human Resources

---

**Macy's East**
**Enhanced Severance Offer**

*The following are questions and answers regarding your options under the Enhanced Severance Offer.*
*These Q&A's are designed to provide general information regarding the Offer. The actual Enhanced Severance Offer*
*[referred to as the "Offer"] and any relevant summary plan descriptions will govern should there be any discrepancy*
*between this general information Q&A and those plan documents.*

**Group 1**

---

### Why is the Company making available the special one-time Enhanced Severance Offer?

❑ As you know, the company recently initiated a change in the traditional method of allocating merit increases. Included in the process is a feature providing for a bonus in lieu of an increase in the event that an employee's hourly rate is at or above the maximum rate for their position. In addition, effective with the May 2005 merit increase program, employees at the maximum rate for their position will continue to be eligible to receive a bonus if their performance evaluation is at the "Exceeds Expectations" level [with the exception of certain specialized positions]. Due to this change, the Company sought to provide an additional option for employees who are at the maximum rate for their position.

### What are the eligibility requirements to participate in the Enhanced Severance Offer?

In order to be eligible for the Enhanced Severance Offer, you must:

1. have been employed by the Company on March 25, 2004; and

2. be a regular full time or part time non-bargaining unit storeline hourly employee of the Company [excluding, for example "on-calls', contingents, temporary employees, tradespersons whether or not covered by a labor agreement]; and

3. for the week ended May 1, 2004, have been compensated on a base hourly rate pay plan or a base hourly rate plus incentive pay plan [excluding draw vs. commission employees]; and

4. for the week ended May 8, 2004 have a base hourly rate in the Human Resource payroll system that is equal to or above the top of the pay range for your position as determined by the Company; and

5. voluntarily terminate employment with the Company on July 31, 2004 or an earlier date agreed to by you and an authorized Human Resources Representative of the Company; and

6. execute a general release; and

7. agree to not seek employment from Macy's East or any other division of Federated Department Stores Inc., for a period of 1 year following your termination of employment.

### If I accept the Offer, how much severance will the Company provide?

❑ A lump sum severance payment equal to two weeks of pay for each completed year of service as of July 31, 2004, based upon your most recent hire date as indicated in the Human Resource System for the week ended May 1, 2004, with a minimum benefit of four weeks severance and a maximum benefit of 52 weeks of severance.

1

**How is the severance calculated?**

❑ The severance benefit is defined as the employee's base hourly rate as indicated in the Human Resource System for the week ended May 8, 2004 times the weekly base scheduled hours as indicated in the Human Resource Payroll system for the week ended May 8, 2004 times the number of full years of service from the employee's most recent date of hire.

**Is this severance payment being made from the Pension Plan?**

❑ No. Unlike prior offerings, this benefit is not being paid through the pension plan. This is a cash payment, subject to normal taxes and withholding, similar to regular wages.

**Is this severance payment eligible for rollover into an IRA?**

❑ No. This is a cash payment, not eligible for rollover.

**Will I be eligible for retiree medical benefits?**

❑ The eligibility for participation in the Federated Health Care Plan for Retirees will allow additional eligible employees to participate in the program. Under these special rules, employees who are eligible for and elect the Enhanced Severance Offer will also be eligible to participate in the Federated Health Care Plan for Retirees if they meet the following criteria:

   a. If formerly employed by A&S, Sterns or Jordan Marsh with a most recent hire date prior to January 1, 1994; _or_ if formerly employed by R. H. Macy & Co., Inc. with a most recent hire date prior to April 1, 1995; and
   b. on July 31, 2004, be at least age 50 with 10 consecutive years of regular status service as defined in the Federated Health Care Plan for Retirees; and
   c. be a participant in a Company-sponsored medical plan [except Starbridge] offered to full-time Associates on June 30, 2004 and at the time of termination of employment.

**Under the revised retiree medical eligibility rules, what changed?**

❑ The special provisions of this Offer have reduced the qualifying age to 50 and the length of service to 10 years. In addition, the five year requirement for participation in a company sponsored medical plan offered to Full-time Associates has been shortened.

**If I chose not to accept the Offer, can I still get retiree medical benefits in the future?**

❑ Yes, if you meet the regular eligibility requirements as defined under the Federated Health Care Plan for Retirees. However, the special revised eligibility requirements apply only to those employees who are eligible for and accept the Enhanced Severance Offer. In the event that you decline the Offer, the regular eligibility rules [as described in the Federated Health Care Plan for Retirees] will apply.

**I have been employed for 13 consecutive years and I am age 50, am I eligible for receive retiree medical benefits if I accept the Offer?**

❑ If you are a participant in a Company-sponsored medical plan offered to full-time associates on June 30, 2004 and you are also a participant at the time of termination of employment [July 31,

2

2004], and you have a most recent hire date as described above, you are eligible to participate in the Federated Health Care Plan for Retirees.

**I have been employed for 13 consecutive years and I am age 50, if I do not accept the Offer, and terminate employment next year, will I be eligible for retiree medical coverage?**

❑   No. In this example, you would have to meet the regular eligibility requirements for retiree medical coverage. In this example, the employee would not yet have met the requirements.

**I am a part time employee and a participant in the Starbridge medical plan, am I eligible for retiree medical coverage?**

❑   No. Participants in the Starbridge medical plan are not eligible for retiree medical coverage.

**How can I learn more about the Federated Health Care Plan for Retirees?**

❑   In the Benefit portion of this document is a general description of the plan. If you have additional questions, please contact Federated HR Services at 1-800-337-2363.

**If I voluntarily elect the Offer, when will my last day be?**

❑   If you voluntarily elect the Offer, your last day of employment will be July 31, 2004 or an earlier date agreed to by you and a Human Resources representative of the Company.

**If I voluntarily elect the Offer, when will I receive the lump sum severance payment?**

❑   If you elect the Offer, you will receive your enhanced severance on or about August 6, 2004.

**If I should die before 7/31/04, will my beneficiaries receive the one-time enhanced severance benefit that is being offered to eligible company employees?**

❑   If you accept the Offer and return the signed general release, and then die before payment, your estate will receive the severance benefit. If you should die prior to returning a signed general release, your estate would not receive the one-time severance benefit.

**What is the deadline for making my decision?**

❑   Eligible employees will have at least 45 calendar days in which to make their decision. Eligible employees who elect the Enhanced Severance Offer will have seven days after they make their election to tell the Company in writing that they have changed their minds.

**If I am eligible, but decide not to take the Enhanced Severance Offer, can I take it later?**

❑   No. You will have at least 45 calendar days to accept the Offer; however, this is a one-time Offer and the Company has no present intention to repeat this Offer.

**Can I accept the Enhanced Severance Offer and then return to work at the Company?**

❑   If you accept the Enhanced Severance Offer, you agree that you will not seek re-employment with the Company, or any other Federated Department Stores division, for at least one year from the effective date of your voluntary termination.

3

**Why must I agree not to return to work at the Company for a year?**

❑   By law, in order to be considered a bona-fide retiree there must be an actual separation from service. We have chosen a one year period in order to be sensitive to those associates who either are not eligible for the Enhanced Severance Offer or choose not to accept the Offer.

**If I accept the Offer, can I collect unemployment?**

❑   The State Unemployment division, not the Company, determines whether or not you are eligible for unemployment benefits. The Company, however, will report your leaving to the state as a voluntary separation.

**I am not eligible for the Enhanced Severance Offer under the guidelines established. Can I ask to be considered for the Offer?**

❑   No. Only those employees who meet the eligibility requirements set by the Company may be offered the enhanced severance benefits.

**What should I do if I have any other questions?**

❑   You can either:

➢   Call the Macy's East information line at 212-494-5810, and someone will respond to your questions within 24 hours or
➢   ask your Human Resources Representative to schedule an individual meeting.

**What is the best decision for me to make?**

❑   The Company cannot advise you on the decision that is right for you. Personal circumstances are important to consider when determining the appropriate decision. You should consult with your financial advisor and you are encouraged to consult with your attorney when making this decision.

| Questions regarding your benefits |
|---|

**How can I find out the balance in my Cash Account Pension Plan**

❑   You can find out your balance information on *in-site* or by contacting Federated HR Services at 1-800-337-2363. You can log on to in-site at home through www.employeeconnection.net or within your store if a kiosk is available.

**Can I take the vested balance of my Cash Account Pension Plan in a lump sum?**

❑   Yes....Under the provisions of the Cash Account Pension Plan, you may take your regular pension benefit [if any] as a lump sum, provided that, if you are married, your spouse must consent in writing to a lump sum payout of your benefit. Your account balance in the Cash Account Pension Plan will, if it is paid in a lump sum, generally be eligible for roll-over to an individual retirement account, or annuity or another employer plan that agrees to accept the roll-over.

**If I voluntarily elect the Offer, and I elect my pension in a lump sum, when will I receive a check?**

4

❑ If you elect the Offer and terminate employment, you may request the appropriate distribution election forms [for both the 401 [k] and pension plans] by contacting Federated HR Services at 1-800-337-2363. Once your properly completed election forms are received by Federated HR Services, you can expect to receive your distribution within 60 days.

**If I am eligible to participate in the Federated Health Care Plan for Retirees, what coverage options are available?**

❑ If the retiree medical eligibility rules as described above are met, under the program a retiree and his or her eligible dependents may participate in the Federated Health Care Plan for Retirees. The Plan currently has a "traditional program" for under age 65 retirees and a "carve-out program", which reduces benefits to the extent Medicare pays for them, for age 65 and over retirees. In addition, the Plan may offer coverage under a number of health maintenance organizations that have contracted with the company to provide benefits.

**What is the Company contribution for retiree medical coverage?**

❑ If you are eligible for and elect retiree medical coverage, the Company will contribute at an annual rate of $50 for each year of your credited service toward the cost of medical coverage up until the month you reach age 65. If you are eligible for and elect retiree medical coverage the Company will contribute at an annual rate of $25 for each year of your credited service toward the cost of such medical coverage for any month which ends on or after your 65th birthday. Generally, Medicare provides primary medical coverage for a retiree when he or she is age 65 or older. The Company contribution will not be greater than the cost of the retiree's coverage.

❑ The retirees cost, either under age 65 or age 65 and older, will be the difference between the total cost of the premium for the coverage option selected as determined by the Company and the Company contribution for the retiree. Although dependents may participate in group retiree medical coverage, the Company does not contribute toward the cost of dependent coverage. Covered persons will be billed for coverage.

**Can I cover my spouse and/or eligible dependent children under the Federated Healthcare Plan for Retirees?**

❑ Yes, if they were covered dependents in the Full-time medical program immediately prior to your retirement. However, you must pay the full cost of dependent coverage. The Company will contribute towards your coverage only.

**How will I receive the Company's contribution?**

❑ The Company's contribution is subtracted from the total cost of your coverage and you will be billed for the balance.

**If I can get less expensive coverage somewhere else, will I still get the Company's contribution to help pay for it?**

❑ No. The Company only contributes toward the cost of Company sponsored options.

**If I drop my coverage or choose no coverage, do I still get the Company's contribution?**

❑ No.

5

**Can I use the Company's contribution to pay my deductible and/or out-of pocket expense?**

- ❑  No.

**What is a year of credited service for purposes of retiree medical coverage?**

- ❑  A year of credited service is a calendar year in which you are paid by the Company for at least 1,000 hours. There are rules in which you can lose your credited service as described in the Federated Health Care Plan for Retirees summary plan description.

**If I drop coverage or die in the middle of the year, do I still get the Company's contribution for the whole year?**

- ❑  No. The company contribution is prorated.

**How are premiums calculated if either my spouse or I am over 65, and if one of us is under 65?**

- ❑  The premium will be the single rate for each type of coverage, less the Company contribution for the retiree's coverage only. The Company contribution will not exceed the total cost of the retiree's coverage only.

**I am a retiree under age 65 but on Medicare. What option am I eligible for and what will the Company contribution be?**

- ❑  You will be eligible for the Traditional option or a managed care option if available. The Company's annual contribution would be $50 per year of credited service, based on current plan provisions. At age 65, you would be eligible for the Medicare Carve-Out option and under the current plan provisions, the Company's annual contribution would be $25 per year of credited service.

**Are prescriptions covered under the Medicare Carve-Out program?**

- ❑  Yes, in general, prescription drugs are covered. There is also a mail order drug program available for maintenance medication.

**I am not eligible to participate in the Federated Health Care Plan for Retirees. What happens to my medical coverage should I elect the Enhanced Severance Offer?**

- ❑  If you are a participant in a Company sponsored medical plan available to full-time employees, your coverage will terminate at the end of the pay period in which you termination employment. You will then be eligible for continuation of coverage under COBRA for a period of up to 18 months. Under COBRA provisions, you maintain the same coverage that you had as an active employee, and pay the full premium plus a 2% administrative fee. If you are eligible for COBRA continuation, you will be notified by Federated HR Services within 45 days of your termination date. If you have any questions regarding COBRA, contact Federated HR Services at 1-800-337-2363.

**Can I elect COBRA continuation coverage if I am eligible to participate in the Federated Health Care Plan for Retirees?**

- ❑  You may elect COBRA continuation coverage or you may elect to participate in the Federated Health Care Plan for Retirees but you may not elect both. If you elect COBRA continuation

coverage, you will not be eligible to participate in the Federated Health Care Plan for Retirees when your COBRA coverage ends. Also, you may not elect to participate in the Federated Health Care Plan for Retirees and then later elect COBRA continuation coverage.

**Can I convert the group life insurance that I had as an active employee to an individual policy?**

❑ Yes – if you terminate employment with the Company and are a participant in the Federated Optional Life Insurance Program, you are generally eligible to convert your coverage to an individual policy with the applicable carrier. The conversion cost will be based on age and determined by the insurance carrier. If you have any questions regarding conversion of life insurance, contact Federated HR Services at 1-800-337-2363.

**If I accept the Offer, will I be eligible for retiree discount?**

❑ The eligibility for retiree discount is not changing. You and your eligible dependents may receive retiree discount if, at the date of your termination, you are at least age 55 and you have completed 15 consecutive years of regular status service OR you have completed 25 consecutive years of regular status of service regardless of your age.

**If I accept the Offer, will I be paid for remaining vacation days?**

❑ The rules governing payment of unused paid time off benefits has not changed. Upon termination, Associates are paid any unused accrued vacation time. However, Associates who are at least age 55 with 15 consecutive years of service are considered 100% vested in vacation, regardless of retirement date.

❑ In addition, any compensatory days earned are payable upon termination.

*Note: Should there be any discrepancy between the information provided here and the summary plan descriptions applicable to any benefit plan or the provisions of the Offer and contents of the general release, the general release and summary plan descriptions will govern. As in the past, the Company reserves to itself, pursuant to its exclusive and sole discretion, the right to change, amend or terminate these plans at any time, without regard to prior satisfaction of eligibility conditions, subject to the terms of any applicable labor agreements.*

## THE ENHANCED SEVERANCE BENEFIT OFFER NOTICE

The Enhanced Severance Benefit Offer (the "Offer") provided by this notice is designed to provide special benefits to eligible employees who work for a division or subsidiary of Macy's East, Inc. ("the Company") and who voluntarily elect to terminate their employment as of July 31, 2004.  Under the Offer, eligible employees who elect to accept the Offer will receive an enhanced severance package.

Whether or not an eligible employee accepts the Offer is completely voluntary.  The decision is completely up to the employee.  The Offer is available for forty-five (45) days from the receipt hereof.

The remainder of this notice gives you details as to the Offer.  Please review it carefully.

WE STRONGLY ADVISE YOU TO CONSULT WITH AN ATTORNEY PRIOR TO MAKING YOUR DECISION IN REGARD TO THE OFFER.

### HIGHLIGHTS OF THE OFFER'S BENEFITS:

The Offer, if you are eligible for and accept it, will provide you with AN ENHANCED SEVERANCE BENEFIT, as described in the MACY'S EAST, INC. ENHANCED SEVERANCE PLAN FOR TOP OF THE RANGE HOURLY EMPLOYEES – GROUP 1.

### ELIGIBILITY:

In order to be eligible for and accept the Offer, you must:

1.    be an hourly paid employee of Macy's East, Inc. who:
   a.    was employed by the Company on March 25, 2004; and
   b.    is a regular full-time or part-time non-bargaining unit storeline hourly paid employee of the Company; and
   c.    for the week ended May 1, 2004, was compensated on a base hourly rate or a base hourly rate plus incentive pay plan; and
   d.    for the week ended May 8, 2004, had a base hourly rate in the Human Resource payroll system that is equal to or in excess off the top of the pay range for their position, as determined by the company; and
   e.    agrees to not seek employment with the Company or any other division of Federated Department Stores, Inc. for a period of one (1) year following the employee's termination of employment; and

2.    not be covered by a written contract of employment; and

Group 1 Release

3.  not be an on-call employee, temporary employee on the Company's payroll, intern, co-op student, tradesperson (whether or not covered by a collective bargaining agreement), draw vs. commission employee, or employee covered by a collective bargaining agreement; and

4.  terminate employment on July 31, 2004, or on any other date as designated in writing by an authorized Human Resource Representative of the Company; and

5.  execute and return to the Company (and not revoke) the General Release attached to this notice.

## DETAILS OF OFFER:

If you are eligible for and accept the Offer, you must also execute and return to the Company (and not revoke) the General Release attached to this notice.

In addition, if you are eligible for and accept the Offer, such General Release requires you to agree to release and waive any claims you may have against the Company, and its affiliates, and, among others, any directors, officers, employees, insurers or agents of such parties, and to agree to return all Company property you may have by the last day that you work for us.

In return for your agreements noted above and/or included in the General Release, the Company will provide the benefits described in the MACY'S EAST, INC. ENHANCED SEVERANCE PLAN FOR TOP OF THE RANGE HOURLY EMPLOYEES – GROUP 1 Summary Plan Description, a copy of which is attached to this notice.

## MAKING YOUR DECISION

The above sections of this notice provide you with a general description of the enhanced severance benefits provided by the Offer. You will also have the opportunity to analyze the Offer for yourself, consult with your own advisor, and acquire from your Human Resources department any more specific information you need to make a decision.

WE STRONGLY ADVISE YOU TO CONSULT WITH AN ATTORNEY PRIOR TO MAKING YOUR DECISION IN REGARD TO THE OFFER.  You are responsible, however, for any costs and fees of your own attorney.

If you are eligible for and decide to accept this Offer, you must accept it no later than forty-five (45) days from the receipt hereof.  You accept the Offer only:

1.  By signing the General Release attached to this notice, under which you agree, among other things, to waive all claims against Macy's East, Inc, and Federated Department Stores, Inc., its divisions, subsidiaries and

affiliates, and, among others, any directors, officers, employees, insurers, or other agents of such parties; and

2.  By personally delivering the signed General Release to your Human Resources Executive or designee no later than the forty-fifth (45th) day after receipt hereof, or by mailing such release to your Human Resources Executive or designee by first class mail, postage prepaid, or certified mail no later than the forty-fifth (45th) day after receipt hereof. If mailed, the date of the postmark or certification will be used to determine when you accepted the Offer.

Also, if you accept the Offer, you will have seven (7) calendar days after the date you accept the Offer to revoke your acceptance by giving written notice of revocation to the Company. Your acceptance of the Offer will become irrevocable on the eighth day after the date you accepted it unless you revoke it by personally delivering a signed revocation to your Human Resources Executive or designee within seven (7) calendar days after the date you accepted the Offer, or by mailing such revocation to your Human Resources Executive or designee by first class mail, postage prepaid, or certified mail within the same seven (7) calendar day period. If mailed, the date of the postmark or certification will be used to determine the date of revocation.

Your enhanced severance payment will be processed within two (2) weeks following the later of: (i) the eighth (8th) day following your acceptance of this Offer; or (ii) your date of termination from the Company.

## A REMINDER

Please remember:

Whether or not you accept the Offer is completely voluntary. You can take advantage of the Offer's benefits or decline to accept the Offer. The Offer is available for forty-five (45) days from the receipt hereof. Changes or modifications to the General Release do not restart the forty-five (45) day period. The Offer is an additional benefit to which you are not otherwise entitled and is in consideration for your agreement to the terms of the General Release that you must sign if you elect to accept this Offer.

Your acceptance of the Offer is irrevocable on the eighth (8th) calendar day after you accept it. If you are eligible for and accept the Offer, your termination date will be a date as designated in writing by an authorized Human Resources representative of the Company. If you do not choose to accept the Offer, you may be eligible for a payment under your division or subsidiary's applicable basic severance plan, if you otherwise meet the eligibility requirements for that plan.

You are encouraged to ask any questions and request any information that you feel is important in making your decision. You are also advised to employ an attorney to help you with understanding the Offer.

## GENERAL RELEASE

1.    This General Release is given by _____ ("Employee") to the Released Parties as defined below in this paragraph 1. This General Release will also be binding on Employee's heirs, successors, assigns, agents, executors, and administrators. This General Release releases Macy's East, Inc., Federated Department Stores, Inc., and all of their predecessors, successors, and assigns, divisions, subsidiaries, facilities, related or affiliated entities, (collectively referred to as "the Company"), and all of their respective current and former officers, directors, shareholders, employees, insurers, agents, and counsel, including, without limitation, any and all current and former management and supervisory employees (hereinafter collectively referred to as the "Released Parties").

2.    The Company advises Employee to consult with an attorney prior to executing this General Release. Employee acknowledges that Employee has been advised by the Company, in writing, to consult with legal counsel of Employee's choosing and that Employee has had the opportunity to consult counsel, if Employee chose to do so. Employee acknowledges that Employee is responsible for any costs and fees resulting from Employee's attorney or any other advisor reviewing this General Release.

3.    The Company hereby advises Employee that Employee will not be eligible to receive benefits under the applicable division's basic severance plan, or any other severance plan, if Employee elects to receive benefits under the Macy's East, Inc. Enhanced Severance Plan for Top of the Range Hourly Employees – Group 1 by signing this General Release.

4.    As consideration for Employee's promises set forth in this General Release, the Company has agreed to provide the Employee with the benefits under the Macy's East, Inc. Enhanced Severance Plan for Top of the Range Hourly Employees – Group 1, as described in the Notice to which this General Release

was attached (the "Notice"). Employee acknowledges that the benefits described in the Notice are more than the Company is otherwise obliged to provide to Employee.

5.    In consideration for the payment of benefits provided to Employee upon Employee's separation from employment, as described in the Notice, and pursuant to the terms of this General Release, Employee releases and discharges forever the Released Parties of and from all actions, causes of action, claims, demands, costs, and expenses for damages, known or unknown, which Employee had or now has or may have against the Company or any of the Released Parties. This release includes, but is not limited to: (a) any claim of age discrimination under the Age Discrimination in Employment Act, as amended, or under any other state or local statute, ordinance, order, or law; (b) any claim of discrimination on any other basis, including, without limitation, race, color, national origin, religion, sex, handicap or disability, marital status, sexual preference, political affiliation, appearance, or any other characteristic (including but not limited to status as a "whistleblower"), under any federal, state, or local statute, ordinance, order, or law, including but not limited to the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans With Disabilities Act, the Older Worker's Benefit Protection Act of 1990, the Family and Medical Leave Act, the Equal Pay Act, the Pregnancy Discrimination Act of 1978, and the Employee Retirement Income Security Act of 1974, and the laws in the state in which Employee worked for the Company, all as the same may have been from time-to-time amended; (c) any other claim relating to Employee's employment, the termination of Employee's employment, or the Released Parties' failure to reemploy the Employee, under any federal, state, or local statute, law, or ordinance, including but not limited to the Employee Retirement Income Security Act of 1974, as amended, and the .Worker Adjustment and Retraining Notification Act; (d) any claim under any contract, tort, or any other state, local, or federal statutory or common law, including but not limited to any claim that the Released Parties, jointly or

severally, breached any contract or promise, express or implied, or any term or condition of Employee's employment, and any claim for promissory estoppel or wrongful discharge arising out of Employee's employment with the Company or any of the Released Parties and/or the termination of such employment; (e) any claim arising under the Company's internal dispute resolution program, Solutions InSTORE; and (f) any claim for severance benefits except as provided by the Macy's East, Inc. Enhanced Severance Plan for Top of the Range Hourly Employees – Group 1. Except as provided in paragraph 6 hereof, this General Release is intended to cover all possible legal and/or equitable relief, including, but not limited to, reinstatement, wages, back pay, front pay, benefits, perquisites, compensatory damages, punitive damages, liquidated damages, damages for pain or suffering, damages for emotional distress, damages for loss of consortium, and attorneys' fees. Employee further agrees not to file any claim, complaint, or cause of action or lawsuit against the Released Parties that Employee has released in this General Release.

6.    This General Release does not waive any claims that cannot be lawfully waived. This General Release does not waive or release any rights or claims that Employee may have under the Age Discrimination in Employment Act, as amended, that arise after the date that Employee executes this General Release. Nor shall this General Release have any effect on Employee's rights, if any: (i) accrued and vested prior to the employment termination date under the Company's retirement plans; or (ii) arising under the provisions of Title X of the Consolidated Omnibus Budget Reduction Act of 1985 ("COBRA"), as the same have been amended, to continue coverage after the employment termination date under the Company's health plans.

7.    Employee agrees that he or she has voluntarily terminated or will voluntarily terminate employment with the Company and that his or her last day of employment will be July 31, 2004 or another date agreed to between Employee and the Company. The Employee will return (or has returned) all property of the

Company, including but not limited to any Company keys, identification, and any Company business or proprietary information in his or her possession, by no later than his or her last day worked for the Company.

8.      Employee acknowledges that the provision of the consideration referenced in paragraph 4 above is conditioned upon the promises in this General Release and is not normally available under Company policy or any other plan or program of the Released Parties. Employee further acknowledges that such payment does not constitute an admission by the Company or any of the Released Parties of liability or of violation of any applicable law or regulation. The Company and the other Released Parties expressly deny any such liability or such alleged violation and state that payment has been made solely for the purpose of compromising any and all claims of the Employee without the cost and burden of litigation.

9.      Employee agrees that all provisions, terms and conditions of this General Release are and shall remain confidential and shall not be disclosed to any person not a party hereto under any circumstances, except as required by court order or other compulsory legal process. Neither Employee nor anyone on Employee's behalf, shall communicate, either orally or in writing, with any print or broadcast media about any matter arising out of Employee's employment with the Company and/or Employee's voluntary resignation from the Company. Notwithstanding the foregoing, the parties hereto expressly agree that Employee may disclose the provisions, terms and conditions of this General Release to Employee's immediate family, attorney(s), and/or financial advisor(s).

10.     Employee agrees that this General Release reflects the complete agreement between the parties hereto and that there are no written or oral understandings, promises, or agreements related to this General Release that have been made to Employee except those contained in this General Release. Employee further agrees that the General Release fully supersedes any and all prior agreements

or understandings concerning the subject matter of this release, to the extent that any such prior agreements or understandings exist.

11.   Employee acknowledges and agrees that Employee will not disclose any confidential or proprietary information belonging to the Company and obtained by Employee or to be obtained by Employee in the course of employment with the Company.

12.   Employee further agrees that Employee will take no action which is intended to, or would reasonably be expected to, harm the Released Parties, impair their reputations, or lead to unwarranted or unfavorable publicity regarding the Released Parties.

13.   The Company hereby informs Employee that the consideration recited in this General Release is being offered as part of the MACY'S EAST, INC. ENHANCED SEVERANCE PLAN FOR TOP OF THE RANGE HOURLY EMPLOYEES – GROUP 1.   The Company further informs Employee of the following:

   a.   The Offer is being made to all eligible employees who are eligible to voluntarily terminate employment pursuant to the terms of the MACY'S EAST, INC. ENHANCED SEVERANCE PLAN FOR TOP OF THE RANGE HOURLY EMPLOYEES – GROUP 1

   b.   In order to accept the Offer, an eligible employee must execute and return to the Company (and not revoke) this General Release within forty-five (45) days as set forth in paragraph 14 below.

   c.   A list of the job titles and ages of:  i) all individuals eligible or selected for the Offer; and ii) all individuals in the same job classification or organizational unit who are not eligible, is provided by Exhibit A hereto.

14.   Employee acknowledges that Employee has had forty-five (45) calendar days from the date that this General Release was first given to Employee to read and

consider it before executing it, although Employee could have executed it at any time within those forty-five (45) calendar days. Employee agrees that any changes to this General Release do not restart the forty-five (45) day consideration period. Employee agrees that Employee has carefully read this General Release and knows and understands its contents, and that Employee signs this General Release knowingly and voluntarily. This General Release was freely negotiated and entered into without fraud, duress, or coercion, and with full understanding of its significance, effects, and consequences, and Employee fully intends to be bound by its terms.

15.    The Employee may revoke and cancel this General Release by providing notice of revocation to the Company in writing at any time within seven (7) calendar days after his or her execution of this General Release. The written notice of revocation must be personally delivered or sent by first class mail, postage prepaid, or by certified mail to the Human Resources Executive or designee within seven (7) calendar days after Employee's execution of this General Release. If mailed, the date of the postmark or certification will be used to determine the date of revocation. If Employee does so revoke by personal delivery or mail, this General Release will be null and void and the Company shall have no obligation whatsoever pursuant to this General Release to provide the consideration referenced in paragraph 4. This General Release shall not become effective and enforceable until after the expiration of this seven (7) day revocation period; after such time, if there has been no revocation, the General Release shall be fully effective, enforceable, and irrevocable.

16.    If any provision of this General Release is declared invalid or unenforceable, the remaining portions of the General Release shall not be affected thereby and shall be enforced.

17.    This General Release shall be governed by the laws of the State of New York, without regard to conflict of laws principles.

Group 1 Release

IN WITNESS WHEREOF, the undersigned _____ has executed this    General    Release    on    this    _____    day    of _____, 2004.

**PLEASE CONSULT WITH AN ATTORNEY AND READ CAREFULLY BEFORE SIGNING.  THIS DOCUMENT CONTAINS A RELEASE AND WAIVER OF ALL KNOWN AND UNKNOWN CLAIMS AND RIGHTS.**

_____
Employee's Signature

_____
Print Name

# MACY'S EAST, INC.
## ENHANCED SEVERANCE PLAN
## FOR TOP OF THE RANGE
## HOURLY EMPLOYEES – GROUP 1
### Summary Plan Description

This document describes the Macy's East, Inc. Enhanced Severance Plan for Top of the Range Hourly Employees – Group 1 ("Plan"), and it is your summary plan description for the Plan.

This plan is in lieu of any applicable basic severance plan ("Basic Plan") covering employees who work for Macy's East, Inc. ("the Company") and who participate as a part of an overall corporate-wide Federated Separation Policy or any severance plan of any of the divisions of Federated Department Stores, Inc. Classes of employees eligible to participate in the corporate-wide Federated Separation Policy are listed on page 7 of this document. An eligible employee who elects to receive a benefit under this Plan shall receive severance under this Plan in lieu of any applicable Basic Plan. The class of participants eligible to participate in this Plan is employees who meet the eligibility requirements set forth in Section II and are employees of Macy's East, Inc. at any Macy's East location, **excluding** employees covered by a collective bargaining agreement.

A complete listing of locations covered by this Plan is provided in the attached Addendum.

## I.    PURPOSE

The Macy's East, Inc. Enhanced Severance Plan for Top of the Range Hourly Employees – Group 1 is designed by the Company to provide financial assistance and additional protection to those eligible employees who voluntarily elect to terminate their employment as of July 31, 2004 and who are not otherwise excluded as described below.

## II.   ELIGIBILITY AND EXCLUSIONS

A.    An hourly paid employee of Macy's East, Inc. is eligible for severance benefits under this Plan if the employee:
1. was employed by the Company on March 25, 2004; and
2. is a regular full-time or part-time non-bargaining unit storeline hourly paid employee of the Company; and
3. for the week ended May 1, 2004, was compensated on a base hourly rate or a base hourly rate plus incentive pay plan; and
4. for the week ended May 8, 2004, had a base hourly rate in the Human Resource payroll system that is equal to or in excess off the top of the pay range for their position, as determined by the company; and
5. voluntarily agrees to terminate employment with the Company on July 31, 2004 or an earlier date agreed to between the employee and an authorized Human Resources representative of the Company; and
6. executes a written release of all claims in the form provided by the Company; and
7. agrees to not seek employment with the Company or any other division of Federated Department Stores, Inc. for a period of one (1) year following the employee's termination of employment.

B.    Any employee covered by a written contract of employment is not eligible for the enhanced severance benefit.

C.    On-call employees, temporary employees on the Company's payroll, interns, co-op students, tradespersons (whether or not covered by a collective bargaining agreement), draw vs. commission employees and employees covered by a collective bargaining agreement are not eligible for the enhanced severance benefit.

D.    Payment under this Enhanced Severance Plan will not be made for any reason, other than as set forth in paragraph A above, including, but not limited to:

1. Voluntary resignation;
2. Voluntary retirement;
3. Termination due to failure to observe company rules and regulations;

4.   Termination for unsatisfactory attendance or job performance; and

5.   Termination for "cause".

"Cause" means that an employee shall have committed any of the following acts prior to termination of employment:

a.   An intentional act of fraud, embezzlement, theft or other material violation of law in connection with the duties or in the course of employment with the Company;

b.   Intentional wrongful damage to material assets of the Company;

c.   Intentional wrongful disclosure of material confidential information of the Company;

d.   Intentional wrongful engagement in any competitive activity that would constitute a material breach of the duty of loyalty; or

e.   Intentional breach of any stated material employment policy of the Company.

E.   Schedule Requirements

To qualify for enhanced severance pay and benefits, an employee must work at an acceptable performance level through his/her designated last scheduled day of work. If an employee leaves the Company prior to the designated last day of work, he/she is not eligible for enhanced severance pay and benefits.

F.   Performance and Attendance Issues

Without limiting the provisions of Section II E hereof, if an employee demonstrates significant conduct, performance or attendance problems before his/her designated last day of work, his/her employment may be terminated and, therefore, he/she becomes ineligible for enhanced severance pay and benefits.

G.   Retirement

An employee's eligibility for enhanced severance pay is not affected in any manner by his/her eligibility for retirement benefits.

## III.   **AMOUNT OF ENHANCED SEVERANCE PAYMENT**

In lieu of any payment under any applicable Basic Plan, an eligible employee will receive two weeks of enhanced severance pay for each full year of completed service as measured from the employee's most recent date of hire (as determined for non-retirement benefit purposes) until the employee's termination

date, but in no event will an eligible employee receive less than four (4) weeks of severance pay or more than fifty-two (52) weeks of severance pay.

## IV. PAYMENT

An eligible employee receives his/her enhanced severance pay in a lump sum, less applicable taxes. Enhanced severance pay shall not be considered as compensation for purposes of pension, 401(k) or other retirement plan(s) maintained by Federated Department Stores, Inc., or any of its divisions, subsidiaries, or affiliates and shall not be eligible for elective deferrals under Internal Revenue Code Section 401(k).

If an employee becomes re-employed with Federated Department Stores, Inc., or any of its divisions, subsidiaries, or affiliates within one year, the employee must reimburse the Company the severance received.

## V. ADDITIONAL BENEFITS

A.  An employee who is eligible for a severance payment under this plan will be eligible for participation in the Federated Health Care Plan for Retirees if the employee satisfies the following criteria as of the employee's date of termination:
1.  the employee is at least age 50;
2.  the employee has at least 10 years of continuous service;
3.  the employee is a participant, as of June 30, 2004 *and* as of date of termination, in a medical program (other than Starbridge) sponsored by Federated Department Stores, Inc.; and
4.  the employee satisfies any other eligibility criteria as set forth in the Federated Health Care Plan for Retirees and any applicable supplement to such plan covering the employee (but disregarding any criterion providing for age, continuous service, or participation in a corporate-sponsored medical program).

B.  An employee who is participating in a medical program sponsored by Federated Department Stores, Inc. as of the employee's termination date may also be eligible for COBRA health care continuation coverage.

## VI. ADDITIONAL CONSIDERATIONS

A.  Enhanced severance payments cover base hourly pay only, based on the hourly rate as reflected in the Human Resource System for the week ended May 8, 2004. Payments will be made in a lump sum (less applicable taxes). Employees will also receive payment for any applicable accrued but unused vacation days.

B.  Payment of Enhanced Severance benefits is contingent on the employee agreeing to and signing a written release of all claims in a form approved by the Company.

C.  The Company may develop any rules and regulations it believes necessary to carry out the intent of this Plan.  The Company retains the sole right to interpret the terms and conditions of the Plan.  Such rules, regulations and interpretations will be final and binding on any employee or former employee.

D.  The Company reserves the right at any time to change, modify, amend or terminate this Plan.

E.  Nothing herein should be construed as an expressed, implied or inferred contract of employment between any individual and the Company, or as a right of any employee to be continued in the employment of the Company, or as a limitation on the right of either the Company or any employee to at any time terminate the employment relationship, with or without cause and with or without notice.

## VII.  <u>CLAIMS AND APPEAL PROCEDURES</u>

A.  How are Claims Filed?

Eligible employees will be paid automatically if they are eligible. Employees do not need to file a claim for benefits.  If an employee believes that he/she is due benefits that are not paid, see the next section called "Denial of Claim."

B.  Denial of Claim

If an employee believes that he/she is eligible for benefits that are not paid, he/she may file a claim with the plan administrator for those benefits. If any benefits are denied, either in whole or in part, the plan administrator will give the employee notice of the specific reason or reasons for the denial, along with reference to the pertinent plan provisions on which the denial is based.  The plan administrator will also indicate what additional material or information, if any, is required to perfect the claim.

The plan administrator will provide notice of any decision denying the claim within ninety (90) days after the claim is filed.  If special circumstances require an extension of time to act on the claim, another ninety (90) days will be allowed.  If such an extension is required, the plan administrator will notify the employee before the end of the initial ninety (90) day period.  If the claim is not processed or a notice is not given

within these time periods, the claim will be deemed to have been denied for the purpose of proceeding to the claim review procedure described in the next section.

C.     Appeal of a Claim Denial

If an employee desires to appeal a claim because there is disagreement about the reason the claim is denied, the employee must notify the plan administrator in writing within sixty (60) days after the date the claim denial was sent to the employee. A request for a review of the claim and for examination of any pertinent documents may be made by the employee or by anyone authorized to act on the employee's behalf. The employee or his/her representative should submit the reasons that he/she believes the claim should not have been denied, as well as any data, questions, or appropriate comments, in writing.

The plan administrator will notify the employee of the final decision within sixty (60) days after receipt of a written request for review unless special circumstances require an extension of time for processing, in which case a further sixty (60) days will be allowed.

D.     How is the Plan Administered?

The Company is the plan administrator. By a resolution of its Board of Directors, the Company may delegate its rights and duties as plan administrator to a committee or to any other person. The name and address of the person to contact about the plan are given in the next section of this summary. The plan administrator is responsible for interpreting and construing the terms of the plan and has the full and sole discretion to interpret those terms.

## ERISA GENERAL INFORMATION

The following general information is required by the federal law called ERISA.

*Name of Plan:*

Macy's East, Inc. Enhanced Severance Plan For Top of the Range Hourly Employees – Group 1 which, with severance policies of certain affiliates of Federated Department Stores, Inc., constitute the Federated Separation Policy.

*Classes of Employees Eligible For Federated Separation Policy:*

Bon-Macy's, Burdines-Macy's, Federated Corporate Services, Inc., Federated Merchandising Group, Macy's East, Macy's West, Rich's/Lazarus/Goldsmith's-Macy's

*Employer/Plan Sponsor:*

Federated Department Stores, Inc. on behalf of its divisions and subsidiaries
7 West Seventh Street
Cincinnati, Ohio 45202
(513) 579-7000

*Employer Identification Number (EIN):*

13-3324058

*Plan Number:*

932

*Type of Plan:*

Severance pay

*Funding:*

The Employer provides benefits under this severance pay plan from its general assets and no insurance company is involved with the plan's administration.

*Plan Administrator:*

Macy's East, Inc.
Attn: Group Vice President,
Benefits/Compensation/Labor & Employee Relations
151 W. 34th Street
New York, New York   10001
(212) 695-4400

*Agent for Service of Legal Process:*

Plan Administrator

*Plan Year:*

The plan's records are maintained on the basis of a plan year that ends each January 31.

1&1-a

## **STATEMENT OF ERISA RIGHTS**

Participants in the Federated Separation Policy are entitled to certain rights and protections under the Employment Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

- Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all plan documents, including insurance contracts, collective bargaining agreements, and copies of all documents filed by the plan with the U.S. Department of Labor, such as detailed annual reports and plan descriptions.

- Obtain copies of all plan documents and other plan information upon written request to the plan administrator. The administrator may make a reasonable charge for the copies.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate the plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of the plan participants and beneficiaries. No one, including the employer, another employee, a union, or any other person, may fire an employee or otherwise discriminate against an employee in any way to prevent such employee from obtaining a welfare benefit or exercising rights under ERISA. If a claim for a welfare benefit is denied in whole or in part, an employee must receive a written explanation of the reason for the denial. The employee has the right to have the plan administrator review and reconsider his/her claim. Under ERISA, there are steps an employee can take to enforce the above rights. For instance, if an employee requests material from the plan and does not receive them within thirty (30) days, such employee may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay the employee up to $110 a day until the materials are received, unless the materials were not sent because of reasons beyond the control of the administrator. If an employee has a claim for benefits which is denied or ignored, in whole or in part, the employee may file a suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if the employee is discriminated against for asserting his/her rights, he/she may seek assistance from the U.S. Department of Labor, or he/she may file suit in a federal court. The court will decide who should pay court costs and legal fees. If the employee is successful, the court may order the person sued to pay these costs and fees. If the employee loses, the court may order him/her to pay these costs and fees, if, for example, it finds the claim is frivolous. If an employee has any questions about the plan, he/she should contact the plan administrator. If an employee has any questions about this statement or about his/her rights under ERISA, he/she should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in the employee's local telephone directory, or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C., 20210.

**ADDENDUM**

Employees covered by the Plan are employees not covered by a collective bargaining agreement at the following locations who meet the requirements set forth in this plan document:

| Location # | Location | State | Location # | Location | State |
|---|---|---|---|---|---|
| 1 | Queens | NY | 74 | Christiana | DE |
| 2 | Brooklyn | NY | 75 | Paramus GSP | NJ |
| 3 | Herald Square Store | NY | 76 | Willowbrook | NJ |
| 5 | Manhasset | NY | 78 | Tysons | MD |
| 6 | Kings Plaza | NY | 79 | Nanuet | NY |
| 7 | Staten Island | NY | 80 | Hamilton | NJ |
| 8 | Menlo Park | NJ | 81 | Bridgewater | NJ |
| 9 | Woodbridge | NJ | 82 | Esplanade | LA |
| 10 | Paramus Park | NJ | 83 | Colonie | NY |
| 11 | Fair Oaks | VA | 84 | Springfield | VA |
| 13 | Smith Haven | NY | 85 | New Orleans | LA |
| 15 | Short Hills | NJ | 88 | East Brunswick | NJ |
| 16 | Livingston | NJ | 89 | Springfield | PA |
| 17 | Freehold | NJ | 90 | King of Prussia | PA |
| 19 | Valley Stream | NY | 91 | White Marsh | MD |
| 20 | Stamford | CT | 92 | Marley Station | MD |
| 21 | San Juan | PR | 93 | Owings Mills | MD |
| 22 | Parkchester | NY | 94 | West Orange | NJ |
| 27 | Ledgewood | NJ | 95 | Pentagon | VA |
| 28 | Danbury | CT | 102 | Huntington | NY |
| 30 | White Plains | NY | 118 | Carle Place Clearance | NY |
| 31 | Boston | MA | 124 | Carle Place Furniture | NY |
| 32 | Massapequa | NY | 125 | Queens Furniture Gallery | NY |
| 34 | Peabody | MA | 126 | Paramus Furniture Gallery | NJ |
| 35 | Bedford | MA | 135 | Cherry Hill Furniture Gall | NJ |
| 36 | Braintree | MA | 136 | Staten Island Furniture Ga | NY |
| 37 | Burlington | MA | 140 | Framingham Furn. | MA |
| 38 | South Portland | ME | 152 | Rt. 35 Furniture Gallery | NJ |
| 39 | Warwick | RI | 165 | Hicksville | NY |
| 40 | Natick | MA | 168 | Douglaston | NY |
| 41 | Salem | MA | 170 | Commack | NY |
| 43 | Brockton | MA | 171 | Hampton Bays | NY |
| 44 | Hyannis | MA | 173 | Cross County | NY |
| 46 | Newington | MA | 174 | Jersey City | NJ |
| 48 | Waterford | CT | 176 | Rt. 46 Furniture Gallery | NJ |
| 49 | Albany | NY | 180 | Middlesex | NJ |
| 50 | Nashua | NH | 181 | Rt. 22 Furniture Gallery | NJ |
| 51 | Trumbull | CT | 183 | Preakness | NJ |
| 52 | Monmouth | NJ | 185 | Flushing | NY |
| 53 | Roosevelt Field | NY | 188 | Rt. 1 Furniture Gallery | NJ |
| 54 | Willowgrove | PA | 190 | BayRidge Bedding | NY |
| 55 | Yorktown | NY | 193 | Columbia Park Bedding | NJ |
| 56 | Bayshore | NY | | | |
| 57 | Bergen | NJ | | | |
| 58 | Swansea | RI | | | |
| 59 | Cherry Hill | NJ | | | |
| 64 | Oxford Valley | PA | | | |
| 65 | Quakerbridge | NJ | | | |
| 66 | Deptford | NJ | | | |
| 70 | Lehigh Valley | PA | | | |
| 71 | Ocean County | NJ | | | |
| 72 | Rockaway | NJ | | | |
| 73 | Montgomery | PA | | | |

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

FILED CLERKS OFFICE

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

2005 JAN 28 P

## I. (a)   PLAINTIFFS

Debra Simon

**DEFENDANTS**

Macys East, Incorporated Department Stores, Inc., and of the Amended Severance Plan for Top of the Range Hourly Employees

DISTRICT COURT
DISTRICT OF MASS

(b)   County of Residence of First Listed Plaintiff   **Norfolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c)   Attorney's (Firm Name, Address, and Telephone Number)   (617) 723-0400
Martha M. Wishart, McKenzie & Associates, PC
44 School St., Ste. 1100, Boston, MA 02108

Attorneys (If Known)

05 C 10182 RWZ

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U.S. Government
       Plaintiff
- ☒ 3   Federal Question
       (U.S. Government Not a Party)
- ☐ 2   U.S. Government
       Defendant
- ☐ 4   Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                  and One Box for Defendant)

|                                              | PTF | DEF |                                                          | PTF | DEF |
|----------------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State                        | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State                     | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country      | ☐ 3 | ☐ 3 | Foreign Nation                                           | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☒ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 USC §§ 1132; 1140; 1022
Brief description of cause:
Plaintiff was wrongfully denied ERISA benefits

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
1/27/05

SIGNATURE OF ATTORNEY OF RECORD
Martha M. Wishart, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

1.    Title of case (name of first party on each side only)  Simon v. Macys East, Inc.

2005 JAN 28 P 1: 16

2.    Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See

local rule 40.1(a)(1)).

U.S. DISTRICT COURT
DISTRICT OF MASS.

| [ ] | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. | |
| [X] | II. | 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, | *Also complete AO 120 or AO 121 |
| | | 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. | for patent, trademark or copyright cases |
| [ ] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, | |
| | | 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, | |
| | | 380, 385, 450, 891. | |
| [ ] | IV. | 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, | |
| | | 690, 810, 861-865, 870, 871, 875, 900. | |
| [ ] | V. | 150, 152, 153. | |

05 CV 10182 RWZ

3.    Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in
this district please indicate the title and number of the first filed case in this court.

N/A

4.    Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ]     NO [X]

5.    Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See
28 USC §2403)

YES [ ]     NO [X]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ]     NO [ ]

6.    Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ]     NO [X]

7.    Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule
40.1(d)).

YES [X]     NO [ ]

A.    If yes, in which division do all of the non-governmental parties reside?

Eastern Division [X]     Central Division [ ]     Western Division [ ]

B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
agencies,  residing in Massachusetts reside?

Eastern Division [ ]     Central Division [ ]     Western Division [ ]

8.    If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If
yes, submit a separate sheet identifying the motions)

YES [ ]     NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Martha M. Wishart

ADDRESS  McKenzie & Associates, P.C., 44 School St., Ste. 1100, Boston, MA 02108

TELEPHONE NO.  (617) 723-0400

(Coversheetlocal.wpd - 10/17/02)